## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

STEVEN L. R. III,                                 )
                                                  )
      Plaintiff,                              )
                                                  )
v.                                                )
                                                  )     Case No. 20-cv-00364-SH
KILOLO KIJAKAZI, Acting                           )
Commissioner of Social Security,[1]               )
                                                  )
      Defendant.                              )

### OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Steven L. R. III requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f.  In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge.  For the reasons explained below, the Commissioner's decision is **AFFIRMED**.

## I.    Disability Determination and Standard of Review

Under the Act, an individual is disabled if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  These impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

of substantial gainful work which exists in the national economy . . . ."   *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. 20 C.F.R. § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue,* 511 F.3d 1270, 1272 (10th Cir. 2008).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff applied for Title XVI benefits on July 17, 2018, with an apparent protective filing date of July 11, 2018.  (R. 10, 175-83.)  Plaintiff alleges that he has been unable to work since April 3, 2000, due to brain cysts, seizures, migraines, mental health problems, arthritis in his knees, and severe anxiety.  (R. 175, 201.)  Plaintiff was 23 years old on the date of the ALJ's decision.  (R. 22, 175.)  He has a 10th grade education and no past relevant work.  (R. 45, 184, 202.)

Plaintiff's claim for benefits was denied initially and on reconsideration, and he requested a hearing.   (R. 63-97, 114-16.)   ALJ Christopher Hunt conducted an administrative hearing and issued a decision on November 27, 2019, finding Plaintiff not disabled.  (R. 10-22, 42-62.)  The Appeals Council denied review on May 27, 2020 (R. 1-6), rendering the Commissioner's decision final.  20 C.F.R. § 416.1481.  Plaintiff timely filed this appeal on July 27, 2020 (ECF No. 2), within 65 days of that order.  *See* 20 C.F.R. § 422.210(c).

## III.   The ALJ's Decision

In his decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of July 11, 2018.  (R. 12.)  At step

two, the ALJ found Plaintiff had the severe impairments of obesity, osteoarthritis of the bilateral knees, headaches, major depressive disorder, social anxiety disorder, generalized anxiety disorder, somatic symptom disorder, and posttraumatic stress disorder. (*Id*.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 13-16.)

The ALJ then determined Plaintiff had the RFC to perform a limited range of light work as defined in 20 C.F.R. § 416.967(b), with the following non-exertional limitations:

> He can frequently climb ramps and stairs and can occasionally climb ladders, ropes, and scaffolding. He can frequently operate pedals and foot controls. The claimant can perform simple, repetitive, and routine work, reasoning level 2 and below. He can tolerate occasional contact with coworkers and supervisors; he can have cursory, superficial contact with the general public (working with things rather than people). He cannot perform work at a strict, fast-paced production standard (i.e., poultry processing).

(R. 16.) The ALJ provided a summary of the evidence that went into this finding. (R. 16-21.)

At step four, the ALJ found Plaintiff had no past relevant work to analyze (R. 21), so he proceeded to step five. There, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform occupations existing in significant numbers in the national economy, including housekeeping cleaner, inspector packer, and laundry sorter. (R. 21-22.) The ALJ thus found Plaintiff was not disabled. (R. 22.)

## IV.    Issue

Plaintiff asserts the ALJ erred in his RFC assessment, because the ALJ failed to account for limitations related to his headaches, specifically his subjectively alleged limitations of an inability to handle stress and a need to lie down in a dark and quiet room when experiencing a headache. (ECF No. 21 at 1.)

## V.     Analysis

### A.     The Medical Records Related to Plaintiff's Headaches

The relevant medical records related to Plaintiff's headaches reveal that Alison Eaton, APRN, treated Plaintiff for headaches from May 2018 through January 2019. (R. 389-90, 393-96, 458-59, 522-23.)  Plaintiff's neurological and psychological examinations were normal at these appointments.  (R. 389, 393, 395, 459, 522.)  At the outset of treatment, Plaintiff reported daily headaches and an arachnoid cyst on his brain.[2]  (R. 395.)  Plaintiff indicated he took over the counter medications for headache pain, but that they "do not seem to help much . . . ."  (*Id.*)  Ms. Eaton referred Plaintiff for a brain MRI, the results of which were unremarkable with no arachnoid cyst visible. (R. 396, 418.)  Ms. Eaton prescribed various medications to treat Plaintiff's headache pain, and Plaintiff reported persistent headaches despite taking these medications. (R. 389-90, 393-96, 458-59, 522-23.)

On July 8, 2018, Plaintiff presented to the emergency department at Mercy Hospital Joplin and reported headache pain, generalized weakness, difficulty sleeping, and morning nausea, sweating, and dizziness.  (R. 366-70.)  A CT scan of Plaintiff's head performed the same day was normal.  (R. 372-73.)  Plaintiff was diagnosed with an acute non-intractable headache and treated with medication.  (R. 369.)

On September 15, 2018, state agency physician Dr. Sean Neeley completed a physical RFC assessment wherein he concluded that Plaintiff could perform the full range of medium work.[3]  (R. 73-75.)  State agency physician Dr. Payton Osborne affirmed this

---

[2] Plaintiff reported that he had not seen a neurologist about the cyst in several years.  (*Id.*)

[3] Medium work involves lifting no more than 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 416.967(c).

finding on review.  (R. 91-94.)

State agency psychologist Edith King, Ph.D., completed a mental RFC assessment on September 9, 2018.  (R. 75-77.)  Dr. King found Plaintiff could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but he could not relate to the general public.  (R. 77.)  State agency psychologist Cynthia Kampschaefer, Psy.D., affirmed Dr. King's findings on review.  (R. 94-95.)

Plaintiff established care with Dr. Gulshan Uppal on February 14, 2019.  (R. 537-39.)  At the outset of treatment, Plaintiff reported 20 headaches per month lasting 5-6 hours each.  (R. 536.).  Plaintiff's physical and neurological examinations were normal.  (R. 537-38.)  Dr. Uppal referred Plaintiff for a brain MRI, the results of which were normal, and he prescribed both preventive and abortive treatment medications.  (R. 538, 601.)  At a follow-up appointment with Dr. Uppal on April 16, 2019, Plaintiff reported improvement in his headaches, but indicated he still experienced 10-12 headaches per month. (R. 599.)  By August 2019, Plaintiff reported severe migraines only "occasionally."  (R. 612.)

### B.    The Consistency Analysis Standards

The ALJ is required to consider Plaintiff's subjective complaints, or symptoms, in determining the RFC.  20 C.F.R. § 416.929(a) & (d)(4); *see also* 20 C.F.R. § 416.902(n) (defining "symptoms" as the claimant's "own description of [his] physical or mental impairment").  When evaluating a claimant's symptoms, the Commissioner uses at two-

step process.4  Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 416.929 (regulation governing the evaluation of symptoms). First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged.  SSR 16-3p at *3. Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's capacity to work.  *Id*. at *4.

Factors the ALJ should consider include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) other factors concerning functional limitations and restrictions due to the symptoms.  *Id*. at *7-8.  The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995)).  The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR

---

4 Tenth Circuit precedent has characterized this as a three-step process, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012).  The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*.  *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished).  The term "credibility," however is no longer used.  SSR 16-3p at *2.  For purposes of this opinion, the Court will refer to this as a "consistency analysis."

16-3p at *10.  Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

###    C.    The ALJ's Consistency Analysis of Plaintiff's Symptoms

In his written decision, the ALJ discussed Plaintiff's most recent function report and administrative hearing testimony.  (R. 15, 17.)  As relevant to this appeal, the ALJ specifically acknowledged Plaintiff's testimony that he experiences "big" headaches twice per week; stress increases his headaches; he tries to sleep when he has a headache;[5] and he sleeps all day when he experiences a "bad" headache.  (R. 17.)  The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 17.)  In reaching this conclusion, the ALJ discussed several inconsistencies between Plaintiff's subjective complaints and the evidence of record, including: (i) the unremarkable brain MRIs in June 2018 and April 2019 (R. 17-18); (ii) the normal head CT scan in July 2018 (R. 17); (iii) Ms. Eaton's and Dr. Uppal's unremarkable physical and neurological examinations (R. 18); (iv) Plaintiff's non-compliance with Ms. Eaton's requests to provide a headache diary (*id*.); (v) Plaintiff's ability to care for his infant daughter and his girlfriend's three-year-old daughter (*id*.); and (vi) the effectiveness of Plaintiff's medication in treating his headaches after medication changes (R. 18-19).  The ALJ thus linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Kepler* and its progeny, as well as SSR 16-3p.

---

[5] Plaintiff does not argue that there is a meaningful distinction between the need to sleep off a headache and the need to lie down in a dark and quiet room.

Plaintiff nevertheless asserts that the ALJ's consistency analysis was insufficient, particularly as to headache-related limitations of "the ability to handle stress and the need to lie down in a dark quiet room." (ECF No. 21 at 10.)

### 1. The ALJ's decision to forgo additional headache-related limitations in the RFC is supported by substantial evidence.

Plaintiff specifically argues that the record "consistently documents light and sound sensitivity," which he argues is "objective evidence" supporting his allegations.[6] (*Id.*) Plaintiff also points to his own "consistent reports of triggers and sensitivity to light and sound," arguing that his case is like that in *Hua v. Astrue,* No. 07-CV-02249-WYD, 2009 WL 524991 (D. Colo. Mar. 2, 2009). (*Id.* at *13.). This case differs from *Hua*, however, in key respects. In *Hua*, the claimant's treating physician identified limitations resulting from a migraine diagnosis. *Id.* at *3 (noting that the doctor concluded that, when the claimant had a headache, she would be unable to perform even basic work activities). Under the rules applicable at the time, the ALJ was required to give "controlling weight" to a treating physician's opinion if it was well supported and not inconsistent with other substantial evidence in the record. *Id.* Instead, the ALJ gave little-to-no weight to the treating physician's opinion, which the *Hua* court found was improper for several reasons, including because the ALJ required "objective evidence" before finding the existence of a migraine impairment, where there is no such test for diagnosing the condition. *Id.* at *3-5. Almost all of Plaintiff's citations to *Hua* relate to

---

[6] Plaintiff does not assert that his self-reports regarding stress are objective evidence.

this portion of the court's findings.[7]

In this case, by contrast, the ALJ neither questioned Plaintiff's headache diagnosis nor rejected <u>any</u> medical source opinion in the record.  There is no medical opinion indicating that Plaintiff is limited in his ability to tolerate stress, or that he must lie down or sleep during a headache.  A medical opinion is "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one for more impairment-related limitations or restrictions" in his ability to perform physical, mental, and other demands of work or in his ability to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2).  The treatment notes to which Plaintiff cites simply record his subjective complaints of light and/or sound sensitivity, or reports from his family, which were conveyed to a medical professional.  (R. 280,[8] 393,[9] 493,[10] 536[11] (cited in ECF No. 21 at 10).)  They are not his medical sources' direct observations of a headache event and do not constitute objective evidence.  20 C.F.R. § 416.902(k) ("Objective medical evidence means signs, laboratory findings, or both."); *id.* § 416.902(l) ("Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart

---

[7] For example, Plaintiff cites *Hua* for the proposition that "the ALJ's reliance on 'normal findings on physical examinations' was an insufficient basis on which to discount migraine symptoms involving photophobia which are considered objective evidence of condition". (ECF No. 21 at 10.)  However, the quotation from *Hua* comes in a discussion of how migraines are diagnosed and the ALJ's improper rejection of the treating physician's diagnosis.  2009 WL 524991, at *4 n.2.

[8] "He said his headaches are so bad that he has to turn off all the lights and sound . . . ."

[9] "Pt . . . says that bright light or sun is making [the headaches] worse . . . ."

[10] "We talked about seizures . . .  Stevie knows exactly what symptoms lead up to a seizure. . . . then the bad migraine headache starts.  Any light, or any movement, severely exacerbates the pain. . . ."

[11] "He is accompanied with his mother and fiancé today.  They report that Stephen had migraine all his life. . . . Headaches are associated with light and sound sensitivity . . . .  Stress and likely lights make the headache worse."

from [the claimant's] statements . . . [and] must be shown by medically acceptable clinical diagnostic techniques."); *see also* SSR 19-4p, 2019 WL 4169635, at *6 (Aug. 26, 2019) ("[W]e will consider the following combination of findings reported by an [acceptable medical source] when we establish a primary headache disorder as [a medically determinable impairment]: . . . [a]n observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an [acceptable medical source]. . . .").

Rather, the issue in this case falls entirely on the ALJ's consistency analysis.[12]  As set forth above, in determining the functional limitations caused by Plaintiff's headaches were not as severe as he alleged, the ALJ specifically considered Plaintiff's complaints about the effect of stress on his headaches and his need to sleep off his headaches; the frequency, duration, and intensity of his headaches; the normal objective medical evidence; his headache diary non-compliance; his daily activities; and the effectiveness of his medication.  (R. 17-20.)  Thus, contrary to Plaintiff's assertion, the ALJ did not base his consistency analysis solely on the objective medical evidence.  *See* SSR 16-3p at *5 ("We will not evaluate an individual's symptoms solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled.").  Notably, SSR 16-3p does not preclude an ALJ from relying on objective medical evidence in evaluating a claimant's symptoms; rather, it prohibits the ALJ from relying on it exclusively.  *Id.* (also noting, "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms").

---

[12] Although not cited by Plaintiff, the *Hua* court also faulted the ALJ's consistency analysis relating to the claimant's headache complaints—primarily by failing to discuss relevant evidence, failing to address the claimant's credited pain in the RFC, and discrediting the claimant's testimony due to minor discrepancies or vagueness in her statements.  2009 WL 524991, at *8-9.

Plaintiff does not challenge the ALJ's reliance on his headache diary non-compliance or daily activities in discounting his subjective symptoms.  Furthermore, the ALJ explicitly accounted for Plaintiff's headaches in setting the RFC, as discussed below.   The ALJ performed the consistency analysis required by the applicable regulations, SSR 16-3p, and Tenth Circuit case law, and there is more than a scintilla of evidence supporting his determination.

> **2.    The ALJ's medication-effectiveness finding is supported by substantial evidence.**

As part of his consistency arguments, Plaintiff also asserts that the ALJ mischaracterized and minimized the evidence of record in finding his headaches were under "good control" with medication.[13]  (ECF No. 21, at 11, 13.)  It is well-established that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004).  However, the ALJ is not required to discuss in detail each piece of evidence in the record.  *See Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").   Plaintiff acknowledges the ALJ considered his reports regarding the frequency of his headaches and the treatment notes that reflect medication adjustments (ECF No. 21 at 11) but nonetheless argues, without pointing to any evidence the ALJ overlooked, that this same evidence supports his allegations.  In so doing, Plaintiff asks the Court to reweigh the evidence to his benefit, which is improper.  *See Smith v. Colvin,* 821 F.3d 1264, 1266 (10th Cir. 2016) ("[I]n

---

[13] Plaintiff appears to be referring to the following statement by the ALJ:  "The claimant's headaches/migraines appear to be under good control with Aimovig and Dr. Uppal recently discontinued Imitrex in favor of Zomig nasal spray for the claimant's occasional severe migraines."  (R. 19 (citing R. 418, 366-69, 458-63, 595-603, 612-16).)

making [the substantial evidence] determination, we cannot reweigh the evidence or substitute our judgment for the administrative law judge's."). In any event, the ALJ did not find Plaintiff's medications completely resolved his headaches. Instead, as discussed below, the ALJ acknowledged Plaintiff's headaches were not fully under control and he included limitations in the RFC assessment to account for them. (R. 20-21.)

### 3.    The ALJ accounted for Plaintiff's headaches in the RFC.

Plaintiff further alleges that the record contains no evidence contradicting his reports of headaches and appears to argue that this required the ALJ to address the impact of his headaches on his ability to work, implying that the ALJ failed to do so. (ECF No. 21 at 10, 14.) However, the ALJ thoroughly analyzed the work-related functional limitations of Plaintiff's headaches, and the Court finds no error in the ALJ's analysis. The ALJ identified headaches as a severe impairment at step two (R. 12) and discussed Plaintiff's testimony and the findings of his treating and reviewing physicians as part of the RFC analysis (R. 16-21). In discussing the opinion evidence, the ALJ found unpersuasive the state agency physicians' opinion that Plaintiff could perform medium work and specifically explained that he further limited Plaintiff to a reduced range of light work due, in part, to Plaintiff's headaches. (R. 20-21.) In making this finding, the ALJ accepted Plaintiff's testimony that his headaches are not fully under control with medication. (R. 21.) Additionally, the ALJ found persuasive the state agency psychologists' opinion that Plaintiff could perform unskilled work. (R. 20.) He then explained that, "[d]ue to headaches (which can be distracting and make concentrating difficult) and mental symptoms," Plaintiff was further limited to simple, repetitive, routine work with a reasoning level of two or below; occasional contact with coworkers and supervisors; cursory, superficial contact with the general public (working with things

rather than people); and no strict, fast-paced production standards such as poultry processing. (*Id.*) Thus, the ALJ considered all the relevant evidence related to Plaintiff's headaches and explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence."). Plaintiff fails to point to any evidence other than his own assertions to support the additional headache-related limitations he claims. *See Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir. 1990) ("a claimant's subjective complaint of pain is by itself insufficient to establish disability" (quoting *Brown v. Bowen,* 801 F.2d 361, 363 (10th Cir. 1986)). The longitudinal evidence in the record does not reflect further limitations, there is no medical source opinion in the record that identifies limitations greater than those included in the RFC assessment, and the ALJ clearly considered the evidence of record. As set forth above, the ALJ also reasonably explained "the link between the evidence and credibility determination." *Kepler,* 68 F.3d at 391. Nothing more was required.

## VI.    Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 17th day of February, 2022.

_____

**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**